

**FEE PAID**

SUMMONS ISSUED

FILED
CLERK, U.S. DISTRICT COURT

MAR 2 6 2026

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION ___ BY DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION — RIVERSIDE

**X. SAINT,**

Plaintiff,

v.

**CHAD BIANCO, individually and in his official**

**capacity as Sheriff of Riverside County; and**

**COUNTY OF RIVERSIDE, CALIFORNIA,**

Defendants.

Case No.: 5:26-cv-01464-CAS-AYP

**COMPLAINT FOR DAMAGES, DECLARATORY**

**AND INJUNCTIVE RELIEF**

(42 U.S.C. § 1983; Cal. Gov. Code § 3206;

Monell v. Dept. of Social Services, 436 U.S. 658 (1978);

First and Fourteenth Amendments, U.S. Constitution;

Article I, Section 10, U.S. Constitution)

**JURY TRIAL DEMANDED**

## I. JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

2. Venue is proper in the Eastern Division of the Central District of California pursuant to 28 U.S.C. § 1391(b) because Defendant Chad Bianco is the duly elected Sheriff of Riverside County, California; the County of Riverside is a named defendant; all acts and omissions giving rise to Plaintiff's claims occurred within Riverside County; the ballot seizure was executed in Riverside County; all uniform campaign appearances occurred in or were directed from Riverside County; and the Riverside County Sheriff's Department headquarters, from which Defendant Bianco conducted his March 20, 2026 press conference in uniform, is located at 4095 Lemon Street, Riverside, California 92501 — within this Division's jurisdiction. The George E.

Brown, Jr. Federal Building and United States Courthouse, located at 3470 Twelfth Street, Riverside, California 92501, is the proper courthouse for filing and hearing of this action.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## II. PARTIES

4. Plaintiff X. Saint is a natural person and a duly filed, legally qualified candidate for Governor of the State of California in the 2026 election. Plaintiff is a 25-year retired veteran firefighter, paramedic, and HazMat specialist of the San Francisco Fire Department, founder of the Legal Intelligence Foundation and the California Illegal Immigration Task Force, CEO of Cyprian, Watkins & Henderson Constitutional Research Firm, and a descendant of the Arawak aboriginal peoples of the Caribbean basin.

5. Defendant Chad Bianco is the duly elected Sheriff of Riverside County, California, having been elected in 2018 and re-elected in 2022. He is and has at all relevant times been a state actor exercising authority conferred upon him by the laws of the State of California. He is also a declared candidate for Governor of California in the 2026 election. He is sued individually and in his official capacity as Sheriff of Riverside County.

6. Defendant County of Riverside is a political subdivision of the State of California and is the employer and principal of Defendant Bianco. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), the County is liable for constitutional violations arising from the official policies, customs, and practices of its policymaking officials, including its elected Sheriff.

## III. FACTUAL ALLEGATIONS

### A. Bianco's Use of Sheriff's Uniform and Badge During Political Campaigning

7. California Government Code Section 3206 expressly provides: "No officer or employee of a local agency shall participate in political activities of any kind while in uniform." This prohibition is unambiguous, mandatory, and has been in effect at all times relevant to this action.

8. Since announcing his candidacy for Governor of California on February 17, 2025, Defendant Bianco has repeatedly, systematically, and openly appeared at campaign events, political rallies, candidate debates, national media appearances, and on his campaign social media accounts while wearing his official Riverside County Sheriff's uniform, including a tan sheriff's department shirt bearing the words "Chad Bianco Sheriff" over the right pocket, his official badge over the left pocket, and the insignia of the Riverside County Sheriff's Department.

9. Defendant Bianco appeared in his official Riverside County Sheriff's uniform at his campaign announcement event in Riverside, California on February 17, 2025; on the international YouTube program "Piers Morgan Uncensored" to discuss his gubernatorial campaign; and on multiple additional television, digital, and in-person campaign appearances throughout 2025 and 2026.

10. During his appearance on "Piers Morgan Uncensored," when directly questioned about whether he was appearing as the Sheriff or as a candidate, Defendant Bianco stated: "It's going to

be both." This statement constitutes a direct admission of the intentional and calculated conflation of his official law enforcement authority with his private political campaign.

11. Defendant Bianco maintains campaign social media accounts titled "Sheriff Chad Bianco" featuring photographs of himself in full uniform, directly linking his official law enforcement title and appearance to his campaign for Governor. These accounts link directly to his campaign website.

12. Defendant Bianco has publicly defended these uniform appearances, stating: "I am an elected official. And with that, in my personal pages, I can do anything that I want. There is only one sheriff's uniform, and that's mine." This statement reflects a deliberate, conscious policy decision to use official law enforcement imagery as campaign infrastructure — not an inadvertent or isolated act.

13. The use of the Sheriff's uniform, badge, and official title in political campaigning creates a false and misleading impression that Riverside County has officially endorsed Defendant Bianco's candidacy for Governor, and it intimidates voters, donors, county employees, and other candidates who might be reluctant to oppose or contravene an acting Sheriff with considerable law enforcement resources at his disposal.

14. The uniform has been prominently displayed at the USC/ABC7 gubernatorial debate on March 24, 2026, in media appearances discussing that debate, and in all subsequent campaign activities, giving Defendant Bianco a unique, state-funded incumbency advantage that no other gubernatorial candidate enjoys or could lawfully replicate.

**B. Bianco's Misuse of Official Law Enforcement Powers — The Ballot Seizure**

15. On or about February 9, 2026, Defendant Bianco directed the Riverside County Sheriff's Department to serve a search warrant on the Riverside County Registrar of Voters, seizing approximately 1,000 boxes of election materials — comprising more than 656,000 ballots cast in the November 2025 special election on Proposition 50, a ballot measure concerning congressional redistricting.

16. Proposition 50 was a redistricting measure that redrew California's congressional districts in a manner favorable to Democrats. It passed statewide. Defendant Bianco is a Republican candidate for Governor who opposed the measure's political objectives. He has a direct, personal, and substantial political interest in the outcome of investigations that cast doubt on the validity of that election.

17. Defendant Bianco initiated this investigation based on a complaint from the Riverside Election Integrity Team, a private citizen group that claimed a discrepancy of approximately 45,800 votes between handwritten ballot intake logs and the total votes certified to the Secretary of State.

18. The Riverside County Registrar of Voters, Art Tinoco, presented detailed evidence to the Riverside County Board of Supervisors on February 10, 2026, demonstrating that the actual discrepancy between ballots cast and ballots counted was approximately 103 votes — well within the state-mandated margin of error — attributable to fatigue errors by temporary election workers who had worked extended shifts. This evidence was available to Defendant Bianco before he executed the warrant.

3

19. Despite the availability of this evidence, Defendant Bianco executed the warrant and seized 656,000 ballots. The California Attorney General, Rob Bonta, sent formal letters to Defendant Bianco beginning on February 26, 2026, stating that: (a) the sheriff's office is not qualified to conduct a ballot recount; (b) there are "serious concerns as to whether probable cause existed to support the issuance of the warrants"; and (c) whether the sheriff's office "presented the magistrate with all material evidence as required by law."

20. Attorney General Bonta characterized the seizure as "unacceptable," setting "a dangerous precedent," and designed to "sow distrust in our elections." The seizure generated massive national media coverage, substantially elevating Defendant Bianco's name recognition and public profile as a gubernatorial candidate at no cost to his campaign.

21. The earned media value of the ballot seizure coverage — appearing in CNN, Fox News, the Associated Press, Spectrum News, Yahoo News, The Hill, and dozens of other national outlets — constitutes an unlawful in-kind contribution to Defendant Bianco's campaign, generated through the misuse of official law enforcement powers.

22. Proposition 50 passed in Riverside County by more than 80,000 votes. Even if the 45,800-vote discrepancy alleged by the citizen group were accurate and entirely fraudulent, it would not have changed the outcome of the election. There was no legitimate law enforcement purpose that required the seizure of 656,000 ballots to investigate a 103-vote clerical discrepancy in a concluded election whose result would not change regardless of the investigation's outcome.

23. The ballot seizure, uniform campaign conduct, and media dominance achieved through official law enforcement authority have collectively given Defendant Bianco an unlawful competitive advantage in the 2026 gubernatorial race, directly suppressing Plaintiff's ability to compete on equal terms as a constitutionally guaranteed matter.

## IV. CAUSES OF ACTION

### COUNT I — Violation of Equal Protection, Fourteenth Amendment

### (42 U.S.C. § 1983 — Against Bianco Individually and County of Riverside)

24. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

25. The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated alike, and prohibits the use of governmental authority to confer unconstitutional competitive advantages upon political actors. U.S. Const. amend. XIV, § 1; see

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985); *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (recognizing equal protection claims by a "class of one" where plaintiff alleges intentional, differential treatment without rational basis).

26. Defendant Bianco, acting under color of state law as the duly elected and serving Sheriff of Riverside County, has used the resources, authority, powers, and imagery of his official governmental position — including his uniform, badge, official title, law enforcement warrant authority, and departmental resources — to confer upon himself a unique and unlawful competitive advantage in the 2026 California gubernatorial race.

27. No other candidate for Governor of California has access to these state-conferred advantages. Plaintiff X. Saint, as a fellow gubernatorial candidate, is a member of a class of persons directly harmed by Bianco's differential use of state resources and authority for personal political benefit.

28. Defendant Bianco's conduct is not rationally related to any legitimate governmental interest. The seizure of 656,000 ballots from a concluded election whose outcome would not change under any scenario serves no legitimate law enforcement function. The use of the official uniform in political campaigning serves no governmental function. Both constitute the naked conversion of public resources to private political benefit.

29. Defendant County of Riverside is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because: (a) Defendant Bianco is the highest-ranking policymaking official of the Riverside County Sheriff's Department; (b) his decisions regarding the use of the uniform in political activities and the exercise of warrant power represent official County policy; (c) the County ratified these decisions by failing to take any corrective action despite public notice and the Attorney General's formal written objections. See also *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) (a single decision by a final policymaker is sufficient to establish municipal liability under Monell).

## COUNT II — Violation of First Amendment Rights of Plaintiff and California Voters

### (42 U.S.C. § 1983 — Against Bianco Individually and County of Riverside)

30. Plaintiff re-alleges and incorporates all preceding paragraphs.

31. The First Amendment protects the right of candidates to engage in political speech and of voters to receive political information on equal terms. *Buckley v. Valeo*, 424 U.S. 1 (1976); *Citizens United v. FEC*, 558 U.S. 310 (2010).

32. Defendant Bianco's use of official law enforcement authority — including his Sheriff's uniform, badge, and warrant power — to generate political publicity constitutes governmental interference with the political marketplace that suppresses the speech of competing candidates including Plaintiff. This is a First Amendment violation cognizable under § 1983.

33. The intimidation effect of an armed, uniformed, sitting Sheriff appearing at campaign events and generating national law enforcement news coverage while running for Governor chills the political speech and participation of voters, donors, and opposing candidates who reasonably fear the exercise of official law enforcement power against those who oppose his candidacy.

34. Defendant Bianco's own statement — "It's going to be both" [sheriff and candidate] — confirms the intentional conflation of official governmental authority with private political activity, establishing both the violation and the requisite mental state for punitive damages under *Smith v. Wade*, 461 U.S. 30 (1983).

## COUNT III — Violation of California Government Code § 3206

### (Pendent State Claim — Against Bianco Individually)

35. Plaintiff re-alleges and incorporates all preceding paragraphs.

36. California Government Code § 3206 provides, without qualification: "No officer or employee of a local agency shall participate in political activities of any kind while in uniform."

37. Defendant Bianco is an officer of a local agency — the Riverside County Sheriff's Department — and has participated in political activities of every kind while in uniform, including campaign announcement events, national television appearances to promote his gubernatorial campaign, and social media content promoting his candidacy. This conduct is an ongoing, willful, and documented violation of California Government Code § 3206.

38. Plaintiff has suffered competitive harm as a direct and proximate result of this statutory violation. Defendant Bianco's uniform appearances generate earned media, public recognition, and an aura of official authority that artificially elevates his standing in the gubernatorial race at the expense of all other candidates, including Plaintiff.

39. California law authorizes injunctive relief to prevent ongoing violations of Government Code § 3206, and Plaintiff is entitled to such relief along with compensatory and punitive damages for the harm caused.

**COUNT IV — Abuse of Official Power / Misuse of State Authority Under Color of Law**

**(42 U.S.C. § 1983 — Against Bianco Individually)**

40. Plaintiff re-alleges and incorporates all preceding paragraphs.

41. A defendant acts under color of state law when he exercises "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

42. Defendant Bianco's execution of search warrants to seize 656,000 election ballots was accomplished exclusively through his official authority as Sheriff — an authority conferred by state law, exercised through state instrumentalities, and impossible without the mantle of state power. He used that state power to generate political gain for his gubernatorial campaign. This is the paradigmatic case of action "under color of state law."

43. An off-duty police officer who uses his badge to commit an unlawful act acts under color of law. *Screws v. United States*, 325 U.S. 91 (1945). Defendant Bianco was not off-duty — he was the sitting Sheriff executing search warrants using departmental resources against a county office in an investigation whose political benefits accrued exclusively to his personal campaign.

44. The Ninth Circuit holds that individual § 1983 defendants must have "personally participate[d] in an alleged rights deprivation." *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010). Defendant Bianco personally directed the seizure, personally held the press conference announcing it, and personally appeared in uniform at all relevant campaign events. Personal participation is established.

**COUNT V — Declaratory Relief**

**(28 U.S.C. §§ 2201-2202 — Against All Defendants)**

45. Plaintiff re-alleges and incorporates all preceding paragraphs.

46. An actual, present, and justiciable controversy exists between Plaintiff and Defendants. Plaintiff is entitled to declaratory judgment that: (a) Defendant Bianco's use of the official Sheriff's uniform in political campaign activities violates California Government Code § 3206;

(b) Defendant Bianco's seizure of 656,000 election ballots using official law enforcement warrant authority, for the purpose of generating political publicity without legitimate law enforcement justification, violates 42 U.S.C. § 1983 and the Equal Protection and First Amendment rights of Plaintiff and California voters; (c) Defendant Bianco's ongoing conduct constitutes an unconstitutional misuse of state authority under color of law; and (d) Defendant County of Riverside is liable under Monell for the policy-level decisions of its policymaking Sheriff.

## V. SURVIVABILITY UNDER FRCP 12(b)(6) — IQBAL/TWOMBLY ANALYSIS

47. Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint survives a motion to dismiss where it pleads factual content sufficient to allow a court to draw the reasonable inference that each defendant is liable for the conduct alleged.

**Color of State Law:** Defendant Bianco's status as the sitting, serving, uniformed Sheriff of Riverside County is a matter of public record subject to judicial notice. His exercise of warrant power is exclusively a function of state law. Color of state law is not a factual dispute — it is established on the face of the complaint.

**Constitutional Violation:** The complaint identifies specific, documented conduct: uniform appearances at campaign events (photographed and publicly available); a specific admission ("It's going to be both"); the seizure of 656,000 ballots by warrant; and the AG's public letters raising probable cause concerns. These are specific facts, not conclusory assertions. They satisfy *Iqbal*'s plausibility standard.

**Monell Liability:** The complaint alleges that Bianco is the final policymaking authority for the Riverside County Sheriff's Department, that his decisions reflect official County policy, and that the County ratified those decisions. Under *Pembaur*, 475 U.S. at 480, a single decision by a final policymaker is sufficient. No additional facts are required at the pleading stage.

**Causation and Harm:** Plaintiff has alleged specific competitive harm — suppressed electoral standing, chilled political participation, and unlawful incumbency advantage — directly caused by Bianco's conduct. This satisfies the causation and injury requirements of *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

**Qualified Immunity:** Qualified immunity does not apply at the motion to dismiss stage unless it is clear from the face of the complaint that the conduct was objectively reasonable. It is not objectively reasonable to: (a) campaign in uniform in violation of an unambiguous state statute; or (b) use warrant power to seize 656,000 ballots to investigate a 103-vote discrepancy in a concluded election. The constitutional rights at issue — equal protection and freedom from governmental interference in political competition — were clearly established at the time of the conduct. See *Harper v. Virginia*, 383 U.S. 663 (1966); *Elrod v. Burns*, 427 U.S. 347 (1976).

## VI. PRAYER FOR RELIEF

7

WHEREFORE, Plaintiff X. Saint respectfully demands judgment against Defendants, jointly and severally, as follows:

A. A TEMPORARY RESTRAINING ORDER and PRELIMINARY INJUNCTION, pursuant to Fed. R. Civ. P. 65, immediately barring Defendant Bianco from wearing his official Riverside County Sheriff's uniform, badge, or any official insignia at any political campaign event, media appearance, or campaign-related activity, pending the resolution of this action;

B. A PERMANENT INJUNCTION barring Defendant Bianco from using his official law enforcement uniform, badge, title, or departmental resources in connection with his campaign for Governor of California or any other political activity;

C. A PERMANENT INJUNCTION barring Defendant Bianco from using the official warrant authority or investigative resources of the Riverside County Sheriff's Department for any investigation whose primary effect or purpose is the generation of political publicity for his personal campaign for Governor;

D. DECLARATORY JUDGMENT that Defendant Bianco's uniform campaign appearances violate California Government Code § 3206, that his seizure of 656,000 election ballots constitutes an unconstitutional misuse of state authority under color of law, and that the County of Riverside is liable under Monell for these violations;

E. COMPENSATORY DAMAGES in the amount of FIVE MILLION DOLLARS ($5,000,000.00), to be paid exclusively in gold bullion or silver bullion of .999 fine purity or greater, at Plaintiff's election, pursuant to Article I, Section 10 of the United States Constitution and the holding of *Bronson v. Rodes*, 74 U.S. 229 (1869), which establishes that when obligations are sued upon demanding payment in gold or silver coin, judgment may be entered in coined dollars and that paper tender cannot constitutionally substitute for coin where coin is demanded;

F. Said gold or silver bullion payment shall be calculated at the current COMEX spot price per troy ounce as of the date of final judgment, with the dollar judgment amount converted to the corresponding troy ounce weight of gold or silver at Plaintiff's election. At the current spot price of $4,388.22 per troy ounce of gold as of March 23, 2026, five million dollars ($5,000,000.00) is equivalent to approximately 1,139.3 troy ounces of gold, or approximately 35.45 kilograms of gold bullion;

G. Said gold or silver bullion shall be delivered to Plaintiff or Plaintiff's designated depository within TWENTY-ONE (21) DAYS of the entry of final verdict. Federal Reserve Notes shall not constitute valid satisfaction of this judgment. Any tender of Federal Reserve Notes in purported satisfaction of this judgment shall be refused as constitutionally deficient tender under Article I, Section 10;

H. PUNITIVE DAMAGES against Defendant Bianco individually in an amount to be determined by the jury, reflecting the intentional, willful, ongoing, and calculated nature of his misuse of official governmental authority for personal political gain. Defendant Bianco's own public statements establish the requisite reckless disregard for Plaintiff's constitutional rights necessary for punitive damages under *Smith v. Wade*, 461 U.S. 30 (1983);

I. ATTORNEY'S FEES AND COSTS pursuant to 42 U.S.C. § 1988, which mandates fee awards to prevailing plaintiffs in civil rights actions, and pursuant to applicable California law;

J. Such other and further relief as this Court deems just, equitable, and constitutionally required.

## VII. DEMAND FOR JURY TRIAL

Plaintiff X. Saint hereby demands a trial by jury on all issues so triable pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b).

Respectfully submitted this 23rd day of March, 2026.

**X. SAINT**

Pro Se Plaintiff

Candidate for Governor of California, 2026

Founder, Legal Intelligence Foundation

CEO, Cyprian, Watkins & Henderson Constitutional Research

Founder, California Illegal Immigration Task Force

Founder, Operation Liberation Jubilee

Retired Firefighter/Paramedic/HazMat Specialist, SFFD (25 Years)

Descendant, Arawak Aboriginal Peoples

## VERIFICATION

I, X. Saint, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on March 23, 2026.

X. Saint

**X. SAINT, Plaintiff**